Minute Order  (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1519 | **DATE** | 4/19/2002 |
| **CASE TITLE** | WENGRYN vs. CONNOR SPORTS FLOORING CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted in part and denied in part. Counsel for the parties are to confer pursuant to Local Rule 54.3 and plaintiff is to file any necessary fee motion by June 20, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 69 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/19/2002 | |
| | | 02 APR 22 AM 8:03 | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID WENGRYN,                                )
                                              )
        Plaintiff,                            )
                                              )
    v.                                        )   No. 01 C 1519
                                              )
CONNOR SPORTS FLOORING                        )
CORPORATION,                                  )
                                              )
        Defendant.                            )
                                              )

DOCKETED
APR 22 2002

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On October 17, 2001, this court granted summary judgment in favor of plaintiff David Wengryn and against defendant Connor Sports Flooring Corporation as to defendant's liability for breaching the parties' Executive Securities Agreement ("ESA"). Plaintiff and defendant have now filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to the issue of damages. For the following reasons, defendant's motion for summary judgment is DENIED and plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.

### UNDISPUTED MATERIAL FACTS

Defendant is a wholly owned subsidiary of Connor SF Holding Company, formerly known as Connor AGA Holding Company ("Parent Company"). Plaintiff was employed by defendant until his termination on September 16, 1999. Pursuant to the ESA, plaintiff holds two forms of securities in the Parent Company, a Junior Subordinated Promissory Note issued November 22, 1996 in the

1

principal amount of $148,800 ("Note") and 240 shares of Class A Common Stock ("Stock"). As a preliminary matter, and as discussed in this court's October 17, 2001 order, while defendant is not named as a party to the ESA, defendant judicially admitted that it was a party to the ESA, which had explicitly referred to the Parent Company. (Answer ¶ 5.). Therefore, this court will consider the Parent Company's obligations as set forth in the ESA to be defendant's obligations for purposes of determining the issue of damages.

It is undisputed that on September 16, 1999, defendant exercised its right under the ESA to give notice to plaintiff that defendant would repurchase the plaintiff's Note and Stock. The plaintiff, thereafter, invoked his right, under the ESA, to have an independent appraiser determine the purchase price. It is undisputed that the valuation was performed by the independent appraiser, Emory Business Valuation, LLC, which issued a report on August 1, 1999 finding that the Note was valued at $215,484 as of September 16, 1999 and the Stock was valued at $21,948 as of September 16, 1999. In a subsequent settlement and release agreement, plaintiff and defendant agreed that the value placed on the securities by the Emory Business Valuation report would be binding on the parties. Under the §5(1)(a)(ii) of the ESA, defendant was required to close the transaction for the purchase of plaintiff's securities on August 31, 2000, which was 30 days after the date on which the independent appraiser issued his report.

As to the form of defendant's required payment to the plaintiff on August 31, 2000, § 5(b) of the ESA provides, in relevant part:

> Notwithstanding anything to the contrary contained in this Agreement, the [Parent] Company's obligations contained herein to make a payment of immediately available funds pursuant to Section 3(f), 4(d) or Section 6(b) of this Agreement shall be suspended to the extent (x) the making of such payment, together with the making of all other payments to be made during such fiscal year on account of the [Parent]

2

Company's purchases of Executive Securities pursuant to this Agreement, would result in a violation of the Delaware Act or a breach of any covenant contained in any loan or other agreement to which the [Parent] Company or any of its Subsidiaries is a party . . . or (y) the [Parent] Company's Subsidiaries are unable to pay to the [Parent] Company dividends or other distributions sufficient to permit it to pay the entire purchase price for such Executive Securities in cash as a result of applicable law or any covenant contained in any agreement to which any of such Subsidiaries are a party . . . . In the event the Delaware Act or a covenant in a loan agreement would be violated by making such a payment, or sufficient dividends and distributions are not available to the [Parent] Company:

i) the [Parent] Company shall pay the amount which it cannot pay in cash by delivery of non-negotiable promissory notes made by the [Parent] Company, providing for payment of the unpaid balance of the purchase price as herein provided. The promissory notes shall . . . provide that (A) interest shall be five percent (5%) per annum with respect to payment for the purchase of Executive Shares or Options and fourteen percent (14%) per annum with respect to payment for the purchase of Subordinated Notes . . . (B) all principal and accrued interest thereunder shall be due and payable in full on the third anniversary of such note . . . . (Wengryn Aff. Ex. A at §5(b).)

It is undisputed that defendant is a party to a credit agreement that prohibits defendant from declaring and paying dividends to the Parent Company because defendant is not, and has not been, in compliance with certain financial covenants in the credit agreement since at least June 1999. The undisputed facts in this case also establish that at no time since at least September 16, 1999 has the Parent Company held any cash. On August 31, 2000 defendant failed to pay plaintiff for his Note and Stock and to date, defendant has given plaintiff neither cash nor promissory notes for plaintiff's Note and Stock.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the

3

nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

## ANALYSIS

Interpreting the ESA on its face and based on the undisputed facts, this court finds that on August 31, 2000, the Parent Company's obligation to pay plaintiff cash for the repurchased securities was suspended and the Parent Company was obligated, instead, to issue plaintiff a three-year non-negotiable promissory note for the balance owed for the repurchase under the terms of §5(b)(i) of the ESA. The ESA contemplated that the Parent Company would obtain the cash necessary to pay for repurchased Parent Company securities, such as the Note and Stock held by plaintiff, by defendant, a subsidiary, declaring and paying dividends on its stock, which is held exclusively by the Parent Company. The ESA agreement expressly suspends the obligation to make cash payments

4

for securities such as those held by Wengryn if such a payment would require defendant to violate a loan covenant. It is undisputed that the Parent Company has not held any cash since at least September 16, 1999 and that defendant cannot declare or pay any dividends to the Parent Company without violating a loan covenant. Therefore, the obligation to pay plaintiff cash was contractually suspended on August 31, 2000.

This court rejects plaintiff's argument that while plaintiff cannot recover cash from the Parent Company, the party with whom plaintiff actually entered into the ESA, plaintiff can recover cash for the amount of his Note from defendant because no loan covenant in the credit agreement to which defendant is a party would be violated by defendant making a payment in cash for the Note. Based upon defendant's judicial admission, this court considered the Parent Corporation's obligations to be defendant's obligations for purposes of deciding liability. This court will do the same for the determination of damages. As plaintiff himself admits, "[defendant's] liability is the same as would have been the liability of its parent corporation had the parent corporation been the defendant in this case" (Pl.'s Mem. in Supp. Of Mot. for Summ. J. at 10.), and "the contractual obligations of [the Parent Company] to the plaintiff are the contractual obligations of [defendant] to the plaintiff." (Pl. 56.1(a)(3) Statement ¶ 4.)

This court also disagrees with plaintiff's contention that any right the defendant had to defer any portion of its payment obligation was required to be exercised at the closing on August 31, 2000 and since defendant failed to do so on that date, defendant lost any right to give plaintiff a three-year promissory Note instead of cash. In determining what damages plaintiff has suffered as a result of defendant's breach, however, "[t]he rights of parties to a contract are limited by the terms expressed in the contract; a court will not rewrite a contract to suit one of the parties, but will enforce the terms

as written." Wright v. Chicago Title Ins. Co., 196 Ill.App.3d 920, 925, 554 N.E.2d 511, 514 (1st Dist.1990); Frydman v. Horn Eye Ctr., 286 Ill.App.3d 853, 858, 676 N.E.2d 1355, 1355 (1st Dist. 1997) ("A court cannot rewrite a contract to provide a better bargain to suit one of the parties."); see also Regensburger v. China Adoption Consultants, Ltd., 138 F.3d 1201, 1206 (7th Cir. 1998) ("applying Illinois law, "After-the-fact disappointment with the results of a contract is not a ground for nullifying the contract's express terms."). Under the ESA, on August 31, 2000, plaintiff was entitled to receive a three-year non-negotiable promissory note in compliance with the terms of §5(b)(i) or the ESA. This court cannot rewrite or disregard the express contractual terms in the ESA that suspend the obligation to tender cash when certain conditions are met. Plaintiff may only recover what he is entitled to under the terms of the contract, or, in other words, what is required to make plaintiff "whole." Therefore, this court denies plaintiff's request for damages in the form of only cash given this court's finding that cash payment on August 31, 2000 was suspended under the ESA, and finds that defendant was instead obligated to deliver two three-year promissory notes to plaintiff on that date: one for the repurchased Note and one for the repurchased Stock.

Turning now to the balance defendant owes to plaintiff, it is undisputed that under the ESA § 5(b)(i), the promissory note defendant must issue to plaintiff shall provide that interest shall be 5% per annum with respect to payment for the purchase of plaintiff's Stock, and 14% per annum with respect to payment for the purchase of plaintiff's Note. The Note plaintiff holds was issued November 22, 1996 in the principal amount of $148,800 and bearing interest at the annual rate of 14% compounded annually on the anniversary date of the Note, and the Stock plaintiff holds includes 240 shares of Class A Common Stock. Defendant exercised its option to purchase the Note and Stock on September 16, 1999. In its appraisal report, Emory Business Valuation LLC valued

6

plaintiff's Note at $215,484 and plaintiff's Stock at $21,948, both as of September 16, 1999. Plaintiff and defendant agreed this valuation of the Note and Stock would be binding on the parties. Accordingly, this court concludes that the value of the promissory note defendant would have been required to give plaintiff on August 31, 2000 in payment for plaintiff's Note would equal the value of the Note with interest accruing at 14% per annum compounded annually with an anniversary date of November 22, with the calculations based on the Note's binding value of $215,484 as of September 16, 1999. The value of the promissory note defendant would have been required to give plaintiff on August 31, 2000 for the repurchased Stock would equal the binding value of the Stock, $21,948, with interest accruing at 5% per annum, with calculations beginning on September 1, 2000. Pursuant to §5(b)(i) of the ESA, the two promissory notes defendant must issue to plaintiff for the repurchased Note and Stock must be payable to plaintiff on August 31, 2003, the third anniversary of the date on which the contractually contemplated promissory notes should have been issued to plaintiff. Therefore, plaintiff is entitled to these items as damages to make plaintiff "whole" for the breach of the ESA.

## CONCLUSION

For all the above stated reasons, defendant's motion for summary judgment is DENIED and plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. Judgment is entered in favor of plaintiff David Wengryn and against defendant Connor Sports Flooring Corporation. Defendant is ordered to forthwith provide plaintiff two promissory notes due and payable in cash by defendant to plaintiff on August 31, 2003: the first note in the amount of $215,484 with interest accruing at a rate of 14% per annum starting September 17, 1999 and payable annually on each November 22 anniversary date thereafter, and the second note in the amount of $21,948 at an interest rate of 5% per annum with calculations of interest beginning on September 1, 2000, the date immediately following the date on which defendant was obligated to close the repurchase transaction.

Defendant is also ordered, pursuant to § 15(g) of the ESA, to pay plaintiff reasonable attorney's fees and costs associated with the prosecution of plaintiff's claim under the ESA. Counsel for the parties are to confer pursuant to Local Rule 54.3 and plaintiff is to file any necessary fee motion by June 20, 2002.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: April 19, 2002

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| WENGRYN | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 01 C 1519 |
| CONNOR SPORTS FLOORING CORP | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff Wengryn and against defendant Connor Sports Flooring Corporation. Defendant is ordered to forthwith provide plaintiff two promissory notes due and payable in cash by defendant to plaintiff on August 31, 2003: the first note in the amount of $215,484.00 with interest accruing at a rate of 14% per annum starting September 17, 1999 and payable annually on each November 22 anniversary date thereafter, and the second note in the amount of $21,948.00 at an interest rate of 5% per annum with calculations of interest beginning on September 1, 2000, the date immediately following the date on which defendant was obligated to close the repurchase transaction.
    Defendant is also ordered, pursuant to §15(g) of the ESA, to pay plaintiff reasonable attorney's fees and costs associated with the prosecution of plaintiff's claim under the ESA.

Michael W. Dobbins, Clerk of Court

Date: 4/19/2002

J. Smith, Deputy Clerk