Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1519 | **DATE** | 8/30/2002 |
| **CASE TITLE** | WENGRYN vs. CONNOR SPORTS FLOORING | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiff's fee petition is granted in part in the total amount of $54,017.19, which equals the total amount requested, $116,436.72 minus $19,913.00 in fees stricken for work on procedurally defective motions, $19, 843.50 stricken for duplicative and excessive work due to plaintiff's use of multiple law firms, $6,309.00 stricken for fees due to plaintiff's change in local counsel, and $13,334.80 stricken as unreasonable and excessive fees incurred in enforcing judgment and pursuing the fee petition. Defendant is ordered to pay $54,017.19 to plaintiff no later than September 16, 2002.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 03 2002 | |
| | Notified counsel by telephone. | | date docketed | 88 |
| | Docketing to mail notices. | | CV | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/20/2002 | |
| | | | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS6 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID WENGRYN,

    Plaintiff,

v.

CONNOR SPORTS FLOORING
CORPORATION,

    Defendant.

No. 01 C 1519

DOCKETED SEP 0 3 2002

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On October 17, 2001, this court granted summary judgment in favor of plaintiff David Wengryn and against defendant Connor Sports Flooring Corporation as to defendant's liability for breach of the Executive Securities Agreement ("ESA"). On April 19, 2002, this court granted plaintiff's motion for summary judgment in part, as to damages, and ordered defendant to forthwith provide plaintiff the damages specified in the final judgment as well as reasonable attorneys' fees and costs associated with the prosecution of plaintiff's case under the ESA. On June 20, 2002, plaintiff filed a fee petition seeking $96,232.47 in fees and costs. On July 26, 2002, defendant filed its objections to plaintiff's fee petition in its entirety. Plaintiff also seeks, as detailed in plaintiff's reply in support of his fee petition, an additional $20,204.25 in fees and costs incurred in defending his fee petition and in attempting to compel compliance with this court's April 19 judgment order. Therefore, plaintiff seeks a total amount of $116,436.72 in fees and costs. For all the following

1



reasons, plaintiff's fee petition is granted in the amount of $54,017.19.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff was employed by defendant until September 16, 1999, when his employment was terminated. Pursuant to the Executive Securities Agreement ("ESA"), plaintiff holds two forms of securities in defendant's parent company and on September 16, 1999, defendant exercised its right under the ESA to repurchase plaintiff's securities. The values of the securities were determined by an independent appraiser and binding on the parties pursuant to the parties subsequent settlement and release agreement. Based on § 5(1)(a)(ii) of the ESA, defendant was required to close the transaction for the purchase of plaintiff's securities on August 31, 2000, but defendant failed to do so. Plaintiff therefore sued to enforce defendant's obligation to purchase the securities under the ESA.

On October 17, 2001, this court granted summary judgment in favor of the plaintiff as to defendant's liability under the ESA, finding that defendant had breached the ESA. The parties, unable to decide on the damages owed under the ESA, returned to this court on February 28, 2002 with cross-motions for summary judgment as to damages. On April 19, 2002, this court entered an order denying defendant's motion for summary judgment, and granting plaintiff's motion for summary judgment in part, and this court ordered defendant to provide plaintiff with promissory notes and interest payments as detailed in the April 19 judgment. On June 13, 2002, because defendant had failed to comply with the April 19 final judgment, plaintiff's counsel filed a motion for rule to show cause, which this court granted on August 19, 2002. On June 20, 2002, plaintiff filed a petition for fees and costs. Following in line with both parties' conduct in contentiously litigating each and every aspect of this breach of contract case, defendant has filed its response to

plaintiff's petition opposing plaintiff's fee petition in its entirety.

## ANALYSIS

I. General Standard Governing Fee Awards

Provisions in contracts for awards of attorney's fees are an exception to the general rule that the unsuccessful litigant in a civil action is not responsible for the payment of the opponent's fees. Kaiser v. MEPC American Properties, Inc., 518 N.E.2d 424, 427, 164 Ill.App.3d 978, 983 (Ill.App. 1 Dist.,1987). "Determination of a fee award is left to the discretion of the district court in light of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" Eddleman v. Switchcraft, Inc., 965 F.2d 422, 424 (7th Cir. 1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983)). District courts possess "wide latitude in . . . evaluating the reasonableness of the attorneys' fees requested." Johnson v. Kakvand, 192 F.3d 656, 661 (7th Cir. 1999). In determining the amount of attorneys' fees to award to the counsel for the prevailing party, the burden is on the party seeking the award to substantiate the hours worked and the rate claimed, and present sufficient evidence from which the trial court can render a decision as to their reasonableness. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983); Kaiser, 518 N.E.2d at 427, 164 Ill.App.3d 978.

II. Plaintiff as Prevailing Party

Section 15(g) of the ESA provides that in the event of a dispute under the ESA, the prevailing party's reasonable attorney's fees and costs shall be promptly reimbursed by the opposing party in the dispute. As part of this court's judgment order as to damages, this court ordered defendant, pursuant to this section, to pay plaintiff reasonable attorney's fees and costs associated with the prosecution of plaintiff's claim under the ESA. Defendant argues that although plaintiff technically

prevailed in this case, plaintiff did not achieve any of the substantive relief plaintiff requested in his complaint and that therefore plaintiff is not a "prevailing party" under the ESA and is not entitled to reasonable attorneys fees and costs.

Defendant correctly contends that in determining the reasonableness of attorney's fees, "reasonableness implies commensurability with results obtained." Bristow v. Drake St. Inc., 41 F.3d 345,352 (7th Cir. 1994). Indeed, where damages are the primary goal of a lawsuit, a comparison between the damages sought and those awarded is highly relevant to the reasonableness of the fee petition. City of Riverside v. Rivera, 477 U.S. 561, 574, 106 S.Ct. 2686 (1986); Johnson v. Kakvand, 192 F.3d 656, 661 (7th Cir. 1999). In this case, defendant argues that plaintiff did not substantively prevail because in his complaint, plaintiff sought cash for the value of the repurchased securities and instead of awarding plaintiff the cash, this court ordered defendant to give plaintiff certain promissory notes pursuant to the ESA for the value of the securities payable on August 30, 2003, plus certain applicable interest, some of which was payable immediately. This court does not find that "plaintiff's victory is de minimis so that the only reasonable attorney's fee is either no fee or a substantially reduced fee." Farrar v. Hobby, 506 U.S. 103, 117, 113 S.Ct. 566 (1992); Maul v. Constan, 23 F.3d 143, 147 (7th Cir. 1994).

Additionally, defendant argues that defendant had repeatedly offered to provide plaintiff with the substitute securities that plaintiff ultimately won in litigation, but that plaintiff had rejected this settlement. Defendant, however, presents no evidence of these "repeated offers" to provide plaintiff with substitute notes. Based on the record before this court, it appears defendant did not offer to provide plaintiff with promissory notes pursuant to the ESA until April 11, 2002, in its reply memorandum in support of defendant's summary judgment motion for damages. This court finds

that plaintiff received more than a "technical victory" or "moral satisfaction" and accordingly, rejects defendant's argument that plaintiff is not the "prevailing party" for purposes of § 15(g) of the ESA.

III. Venue

Defendant also objects to any fees and expenses incurred because plaintiff originally filed this lawsuit in Georgia state court. Defendant argues that filing in Georgia state court was unreasonable because § 15(f) of the ESA vests courts in Cook County with exclusive jurisdiction over enforcement of the ESA. Section 15(f) of the ESA states, in relevant part, that plaintiff "irrevocably consents and submits to the exclusive jurisdiction of any local state or federal court within the County of Cook in the State of Illinois for enforcement by the [defendant] of this Agreement." By this forum selection clause, plaintiff waived any objection he may have had to venue in defending any enforcement claims by the defendant. This case, however, was brought by the plaintiff, not the defendant, in an effort to enforce plaintiff's claim under the ESA. Accordingly, this court finds that plaintiff did not unreasonably choose Georgia as the forum to litigate his claims. Therefore, this court will not strike any fees or costs associated with defendant's transfer of the case out of the Georgia state court to this court.

IV. Alholm, Monahan, Keefe, Klauke, LLC

Defendant makes the general argument that this court should not reward any of the fees and costs requested for work done by Alholm, Monahan, Keefe, Klauke ("Alholm, Monahan") because plaintiff has not affirmatively stated that the Alholm, Monahan fees were reasonable and plaintiff bears the burden on this issue. Plaintiff does, however, submit with his fee petition a detailed statement of the firm's fees and expenses incurred in working on this case, as well as the affidavit of Linda Hay, a partner at Alholm, Monahan, attesting to the reasonableness of those fees. This

5

court will not, as defendant requests, disallow all fees and costs requested for Alholm, Monahan services. Instead, this court will accordingly look to the materials plaintiff submitted to make a determination as to the reasonableness of the individual fees and costs.

V. Defective Motions

Through the course of this litigation, over half of the motions filed by plaintiff's counsel in this case were stricken for violations of various procedural rules. (See Docket Entries Nos. 19, 23, 25, 40, 44, and 63.) Five of the six motions stricken were motions for summary judgment due to plaintiff's counsel's repeated failure to comply with Local Rule 56.1. Defendant argues that any attorney's fees and costs incurred in connection with these motions are unreasonable. This court agrees. This court strikes the following fees and costs associated with these six procedurally defective motions filed by plaintiff's counsel:

Alholm, Monahan, Keefe and Klauke, LLC

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Anne M. Oldenburg | 1.0 | $175.00 | $175.00 |
| Linda J. Hay | 10.1 | $175.00 | $ 1,767.50 |
| Brian C. Thomas | 37.5 | $175.00 | $6,562.50 |

Smith, Gambrell and Russell, LLP - 2001

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Tracie Johnson | 52.1 | $180.00 | $9,378.00 |
| Matthews Coles | 2.9 | $300.00 | $870.00 |

Smith, Gambrell and Russell, LLP - 2002

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Tracie Johnson | 2.3 | $200.00 | $460.00 |
| Matthews Coles | 2 | $350.00 | $700.00 |

TOTAL HOURS: 107.9

TOTAL FEES STRICKEN FOR DEFECTIVE MOTIONS: $19,913.00

Next, defendant contends that the fees and costs expended in connection with plaintiff's motion to disqualify defendant's counsel and plaintiff's motion to extend discovery were also unreasonable and must be stricken. Defendant argues that these motions were without legal or evidentiary basis, and without merit. This court finds, however, that the filing of these two motions was a part of plaintiff's litigation strategy and there is no evidence that plaintiff did not file these motions in good faith. Accordingly, this court will not strike the fees and costs incurred in filing these two motions.

Defendant also objects to time plaintiff's counsel spent in preparing material that was never filed or served. For example, defendant objects to the fees for time spent on several matters related including interrogatories and depositions, and several other motions that plaintiff never filed, including a motion to clarify, a motion for status, a request for admission, a motion for final judgment, a motion to strike, and a pro hac vice application. This court does not find the amount of time plaintiff's counsel spend on these matters as part of plaintiff's counsels' litigation strategy to be unreasonable, despite the fact that these papers were never filed. This court does not believe it was imprudent or unreasonable for plaintiff's counsel to prepare thoroughly, especially in light of the contentious nature of this litigation.

VI. Multiple Law Firms

Plaintiff, who is a resident of Georgia, has been represented by three separate law firms. The law firm of Smith, Gambrell, & Russell, LLP ("Smith, Gambrell"), located in Atlanta, Georgia, has been plaintiff's counsel since the inception of this case. When the case was transferred to this court, plaintiff retained Alholm, Monahan, based in Chicago, as local counsel. Alholm Monahan represented plaintiff as local counsel from March 2001 through February 2002. Finally, in February,

2002, Fox, Hefter, Swibel, Levin and Carroll ("Fox, Hefter"), also based in Chicago, replaced Alholm, Monahan as local counsel. Throughout the litigation, Smith, Gambrell, as plaintiff's counsel in Atlanta, continued to perform substantive work but never appeared before this court. Defendant has objected to all the attorneys fees and costs incurred by all three of the law firms for the entire duration of the case. Defendant contends generally that none of the fees and costs incurred by Smith, Gambrell should be allowed because having both Atlanta and Chicago counsel performing substantive work created unreasonable duplication and excessive inter-firm consultations. Defendant objects to all fees and expenses Smith, Gambrell incurred in conferring with other attorneys or vice-versa, and all fees incurred during the transitional period between law firms. Further, defendant maintains that the Smith, Gambrell fees and costs are unreasonable as a whole because Smith, Gambrell counsel never physically appeared before this court.

This court does not find that plaintiff's use of two law firms at any given time during the case, one as the main firm and one as local counsel, was per se unreasonable, as defendant argues, given the fact that plaintiff was a resident of Georgia and the case was litigated in Illinois. The fact that the Smith, Gambrell attorneys never formally appeared before this court does not preclude Smith, Gambrell from seeking fees for services rendered. Also, this court does not find that simply because both Smith, Gambrell, and local counsel performed substantive work for the case, that the separate efforts of counsel were per se duplicative.

However, upon an exhaustive review of the fee petition and the chart submitted by defendant (Def.'s Resp. to Fee Petition, Ex. A) detailing defendant's objections, this court finds that plaintiff's use of multiple law firms resulted in significant overstaffing, duplication of work, and excessive inter-firm communication. For example, from May 21, 2001 through August 28, 2001, Alholm,

Monahan performed a substantial amount of work on several motions for summary judgment that were ultimately stricken by this court for procedural deficiencies. From May 14, 2001 through August 28, 2001, Smith, Gambrell also billed a significant number of hours for work spent on those same motions for summary judgment. As another example, from December 5, 2001 through January 16, 2002, Alholm, Monahan billed approximately twenty-five hours for work completed on the motion for summary judgment on damages. From November 9, 2001 through January 23, 2001, Smith, Gambrell billed approximately fourteen hours for work on that same motion for summary judgment and for numerous telephone conversations with Alholm, Monahan about this motion. Both Alholm, Monahan and Smith, Gambrell worked on the motion to disqualify and the motion for protective order, and when Fox, Hefter took over as local counsel, both Fox, Hefter and Smith, Gambrell billed time spend on preparing the motion for summary judgment filed in February, 2002.

The above findings represent a few examples of many instances where both the Smith, Gambrell and local counsel performed work on the same substantive issue; it is overly cumbersome for this court to list each and every instance when this occurred in this case. This court finds generally that plaintiff's practice of using two law firms to perform substantive work on one motion constituted unnecessary and unreasonable overstaffing. See Jardien v. Winston Network, Inc., 888 F.2d 1151, 1160 (7th Cir.1989) ( "While we have refused to lay down a flat rule of one lawyer per case, the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time.") (citations omitted). Therefore, in addition to the charges already stricken in the previous section for work done on procedurally defective motions, this court strikes the following hours and charges by the multiple law firms plaintiff utilized due to what this court finds to be redundant, excessive and duplicate work performed:

Alholm, Monahan, Keefe and Klauke, LLC

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Anne M. Oldenburg | 1.5 | $175.00 | $262.50 |
| Linda J. Hay | 13 | $175.00 | $2275.00 |
| Brian C. Thomas | 14 | $175.00 | $2450.00 |

Fox, Hefter, Swibel, Levin and Carroll

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Daniel Hefter | 23.6 | $295.00 | $6962.00 |

Smith, Gambrell and Russell, LLP - 2001

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Tracie Johnson | 30.3 | $180.00 | $5,454.00 |
| Matthews Coles | 1.3 | $300.00 | $390.00 |

Smith, Gambrell and Russell, LLP - 2002

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Tracie Johnson | 6.4 | $200.00 | $1280.00 |
| Matthews Coles | 2.2 | $350.00 | $770.00 |

TOTAL HOURS:    92.3

TOTAL FEES STRICKEN FOR DUPLICATIVE WORK: $19,843.50

Additionally, this court finds that it is unreasonable to award plaintiff the fees charged due to plaintiff's decision to change local counsel in February, 2002. The change in local counsel resulted in over twenty hours of time spent informing new local counsel Fox, Hefter about the case. Accordingly, this court strikes the following fees incurred during the transitional period when Fox, Hefter replaced Alholm, Monahan as plaintiff's local counsel:

Alholm, Monahan, Keefe and Klauke, LLC

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Brian C. Thomas | 1.6 | $175.00 | $280.00 |

Fox, Hefter, Swibel, Levin and Carroll

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Daniel Hefter | 16.4 | $295.00 | $4838.00 |
| Todd Fox | 3.7 | $180.00 | $666.00 |

10

Smith, Gambrell and Russell, LLP - 2002

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Tracie Johnson | 1.4 | $200.00 | $280.00 |
| Matthews Coles | 0.7 | $350.00 | $245.00 |

TOTAL HOURS: 23.8

TOTAL FEES STRICKEN FOR TRANSITIONAL WORK: $ 6,309.00

VII. Simonini Deposition

Defendant also specifically objects to the time Alholm, Monahan, and Smith, Gambrell billed to prepare for the deposition of Mr. Joseph Simonini, the Chief Financial Officer of defendant corporation, in November and December 2001. Defendant argues that this deposition was not reasonably necessary at the time it was taken because prior to the deposition of Mr. Simonini, plaintiff's counsel had already finalized a motion for summary judgment on damages and the motion was filed while the deposition was proceeding. However, plaintiff maintains that the deposition was taken at a time when defendant was defending the case on the basis that its financial condition did not permit it to comply with the terms of the ESA. Therefore, plaintiff argues, the deposition of defendant's chief financial officer at that time, even after the motion was filed, was a reasonable course of action. This court agrees with plaintiff and finds that plaintiff did not act unreasonably in taking Mr. Simonini's deposition after filing a motion for summary judgment on damages given the likelihood that defendant would oppose plaintiff's motion. Plaintiff was not required to wait until this court ruled on the summary judgment motion to decide whether this discovery was needed. Accordingly, this court will not strike the fees and costs incurred in taking Mr. Simonini's deposition.

VIII. Costs

As to the fees and related nontaxable expenses incurred by plaintiff's counsel, plaintiff seeks $531.94 for Smith, Gambrell expenses and $3,615.90 for Fox, Hefter expenses. Plaintiff has not submitted any material regarding nontaxable expenses incurred by Alholm, Monahan. Defendant failed to present this court with any objections to plaintiff's request for these expenses and costs. This court finds that the amount and nature of the expenses listed for reimbursement meet the minimum level of detail that paying clients would probably find sufficient and reasonable to pay, except for the computer assisted research amounts, which total $149.05 for Smith, Gambrell, and $2870.18 for Fox, Hefter. Computer research charges are considered a form of attorneys' fees. Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 409 (7th Cir. 2000); Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440-41 (7th Cir.1994). The idea is that computer-assisted legal research essentially raises an attorney's average hourly rate as it reduces (at least in theory) the number of hours that must be billed. Montgomery, 231 F.3d at 409; Haroco, 38 F.3d at 1440-41. As a form of attorneys' fees, the charges associated with such research are not separately recoverable expenses. Montgomery, 231 F.3d at 409. Accordingly, this court strikes a total of $3,019.23 in expenses for Smith, Gambrell's and Fox, Hefter's computer-assisted legal research expenses, but allows plaintiff to recover the remaining $1,128.61 in expenses and costs.

IX. Motion for Rule to Show Cause and Fee Petition

In plaintiff's reply in support of his fee petition, plaintiff argues that he has been compelled to incur an extra $20,204.25 in attorneys' fees since this court's April 19, 2002 judgment in attempting to compel compliance with the April 19 judgment through a motion for rule to show cause, and in an effort to overcome defendant's objection plaintiff's entire fee petition. Upon review of the records plaintiff submitted, this court finds that $6,129.50 of the total $20,204.25 requested

was incurred in litigating plaintiff's motion for rule to show cause. While this court is recognizant of its August 19, 2002 ruling that defendant was in contempt of court for failing to comply with its obligations under this court's April 19 final judgment, this court nonetheless finds that almost thirty hours and $6,129.50 in fees incurred by plaintiff in trying to enforce the judgment is excessive and unreasonable given the uncomplicated and straightforward nature of the main issue in plaintiff's rule to show cause motion. Accordingly, this court reduces this fee by sixty-six percent, and allows plaintiff to recover $2,084.03 for work performed in enforcing judgment.

As to the remaining $14,074.75 in fees plaintiff requests for preparation of the fee petition, this court finds the amount of work devoted by plaintiff's counsel to the fee petition to be unreasonable. See generally Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 553-54 (7th Cir. 1999) (awarding only fees and costs "reasonably expended" in preparation of fee request). The $14,074.75 in fees spent in pursuing fees represents almost thirty percent of the $47,147.74 fee amount determined by this court to be reasonable for the litigation of this case. See id. (finding the "amount of time and effort devoted by counsel to the pursuit of fees to be excessive and, this "reinforc[ed] our impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue.") Accordingly, this court reduces the fees incurred in preparing and defending the fee petition by sixty-six percent, leaving $4,785.42. In sum, this court allows a total of $6,869.45 for work done in enforcing judgment and in connection with the fee petition.

## CONCLUSION

For all the reasons stated herein, plaintiff's fee petition is granted in part in the total amount of $54,017.19, which equals the total amount requested, $116,436.72, minus $19,913.00 in fees stricken for work on procedurally defective motions, $19,843.50 stricken for duplicative and

13

excessive work due to plaintiff's use of multiple law firms, $6,309.00 stricken for fees due to plaintiff's change in local counsel, and $13,334.80 stricken as unreasonable and excessive fees incurred in enforcing judgment and pursuing the fee petition. Accordingly, defendant is ordered to pay $54,017.19 to plaintiff no later than September 16, 2002.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: August 30, 2002